UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

                                                              :

STANDEX INTERNATIONAL CORPORATION :
and BAKERS PRIDE OVEN CO., LLC :
f/k/a BPOC ACQUISITION CO., INC., :
                                                       :

                                       Plaintiffs, :

                                                       :

                     v. :

QCP, INC. f/k/a BAKERS PRIDE :    16 Civ. 492 (KPF)
OVEN CO., INC., :

                                                       :    <u>OPINION AND ORDER</u>

                   Defendant/Third- :
                   Party Plaintiff, :

                                                       :

                     v. :

APW/WYOTT FOODSERVICE EQUIPMENT :
COMPANY and ASSOCIATED AMERICAN :
INDUSTRIES, INC., :

                                                       :

                          Third-Party :
                          Defendants. :

                                                       :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 6, 2017

KATHERINE POLK FAILLA, District Judge:

       Plaintiffs Standex International Corporation ("Standex") and Bakers Pride

Oven Co., LLC ("Bakers Pride," and with Standex, "Plaintiffs"), brought this

action against Defendant QCP, Inc. ("QCP" or "Defendant"), seeking (i) a

declaratory judgment affirming Plaintiffs' interpretation of the parties' Asset

Purchase Agreement (the "APA"), and (ii) damages for QCP's breach of its APA

indemnification obligations.  QCP asserted counterclaims against Plaintiffs,

pursuing (i) a declaratory judgment affirming QCP's interpretation of the APA,

(ii) reimbursement for its legal costs, and (iii) a declaration of Plaintiffs'

indemnification or contribution obligations and a court order directing Plaintiffs to remit the same to QCP and/or QCP's insurers.  QCP also brought an action against APW/Wyott Foodservice Equipment Company ("APW") and Associated American Industries, Inc. ("AAI," and with APW, "Third-Party Defendants") to obtain similar relief: (i) a declaratory judgment affirming QCP's interpretation of the APA, (ii) reimbursement for QCP's legal costs, and (iii) a declaration of Third-Party Defendants' indemnification or contribution obligations and a court order directing Third-Party Defendants to remit the same to QCP and/or QCP's insurers.

Plaintiff Standex has moved to dismiss the counterclaims against it under Federal Rule of Civil Procedure 12(b)(6); AAI and APW have moved to dismiss Defendant's Third-Party Complaint on the same basis.  For the reasons set forth herein, both motions are granted.

## BACKGROUND[1]

### A.     Factual Background

### 1.     The APA Between QCP and Bakers Pride

In the summer of 1995,[2] QCP, its shareholders, and Bakers Pride "entered into [the APA] for the sale of certain defined assets, including tangible personal property and equipment, inventory, accounts receivable, the 'Baker's Pride' corporate name, and other assets." (Compl. ¶ 9; TPC ¶¶ 26-27).[3] Various subsections of the APA detailed the terms of the exchange: Section 1.03 governed the retention of liabilities and established that as of the APA's Effective Date, Bakers Pride would "assume and agree to pay *only* the liabilities and obligations" of QCP that were "listed on Schedule 1.03." (Compl. ¶ 11 (emphasis added); *see also id.* at Ex. A; TPC, Ex. A). These liabilities included, as relevant here, "[p]roduct liabilities based on events that occurred

---

[1]     This Opinion draws on facts from Plaintiffs' Amended Complaint ("Compl." (Dkt. #12)), the exhibit attached to it ("Compl., Ex. A" (Dkt. #1-1)), Defendant's Amended Answer, ("Ans." (Dkt. #38)), Defendant's Third-Party Complaint (the "TPC" (Dkt. #39)), and the exhibits attached to both of Defendant's pleadings ("Ans., Ex. [designation]"). *See, e.g.*, Fed. R. Civ. P. 10(c) ("A copy of any written instrument that is an exhibit to a pleading is a part thereof for all purposes."); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (addressing materials a court may properly consider in the context of a Rule 12(b)(6) motion). For clarity and ease of reference, the Court will refer to Plaintiffs' and Third-Party Defendants' Memorandum of Law in Support of their Motion to Dismiss as "Pl. Br." (Dkt. #59), to QCP's Memorandum in Opposition as "Def. Opp." (Dkt. #63), and to Plaintiffs' and Third-Party Defendants' Reply as "Pl. Reply" (Dkt. #64).

[2]     The APA's closing date was July 20, 1995, but its effective date was June 30, 1995. (Compl., Ex. A).

[3]     At the time of the APA's execution, Defendant QCP and Plaintiff Bakers Pride were known as Bakers Pride Oven Company, Inc., and BPOC Acquisition Company, Inc., respectively. (Compl. ¶¶ 9, 21). Bakers Pride Oven Company, Inc. changed its name to QCP, Inc. on or about July 24, 1995. (*Id.* at ¶ 20). BPOC Acquisition Company, Inc., changed its name to Bakers Pride Oven Co., Inc., on or about July 26, 1995. (*Id.* at ¶ 21). To avoid confusion, the Court will refer to these parties throughout by the latter names, which they utilize currently and by which they have been identified in this litigation.

after the Closing Date" of July 20, 1995.  (Compl., Ex. A; TPC, Ex A).

Section 1.03 also emphasized the exclusivity of these listed liabilities, noting

that Bakers Pride would "not assume or be liable for any other liabilities or

obligations" of QCP except as otherwise specified by the APA.  (Compl., Ex. A;

TPC, Ex. A).

Article VI of the APA addressed the issue of indemnification.  Section

6.01 dictated that QCP and its shareholders

> agree[d] to indemnify, defend and hold harmless
> [Bakers Pride] and its officers, directors, agents,
> attorneys and affiliates from and against all losses,
> claims, obligations, demands, assessments, penalties,
> liabilities, costs, damages, reasonable attorneys' fees
> and expenses (collectively, "Damages") asserted against
> or incurred by them by reason of or resulting from …
> [a]ny product liability based on events that occurred on
> or prior to the Closing Date; … [or] [a]ny liability of [QCP]
> not specifically assumed by [Bakers Pride in the APA].

(Compl., Ex. A; TPC, Ex. A).  Section 6.02, in turn, outlined Bakers Pride's

corresponding indemnification obligations, stating that Bakers Pride

> agree[d] to indemnify, defend and hold harmless [QCP]
> and [its] Shareholders and [QCP's] officers, directors,
> agents, attorneys and affiliates from and against all
> Damages asserted against or incurred by them by
> reason of or resulting from … the failure of [Bakers
> Pride] to pay, perform and discharge when due any
> Assumed Liabilities.

(Compl., Ex. A; TPC, Ex. A).

**2.      Standex, AAI, and APW**

There is no dispute that the remaining parties to this litigation —

Standex, AAI, and APW — were not signatories to the APA.  (Compl. ¶ 16; Pl.

Br. 3; Def. Opp. 8).  But BPOC Acquisition Company, Inc., which was a

4

signatory, is alleged to have been formed by "certain members of APW," for the purpose of entering into the APA. (TPC ¶ 13). It is further alleged that at some point after the execution of the APA, both Bakers Pride and APW became subsidiaries of AAI. (*Id.* at ¶ 33; TPC, Ex. B at 3; Ans., Ex. B at 3).

On January 9, 2007, Standex and AAI entered into a Stock Purchase Agreement (the "SPA"), through which Standex purchased all shares of AAI, including all shares of Bakers Pride. (TPC ¶¶ 15-18; *id.* at Ex. B). QCP contends that this purchase made Standex "a corporate affiliate of [Bakers Pride]" (Compl. ¶¶ 22-23), and, by extension, made Bakers Pride a Standex subsidiary, "a member of the [Standex] family of companies," and "a division of [Standex]" (TPC ¶¶ 17-18; *see also id.* at ¶¶ 34-36).

### 3. The Asbestos Litigations

Plaintiffs "have been named and anticipate that they will continue to be named as defendants in numerous claims alleging bodily injury from exposure to asbestos allegedly contained in 'Bakers Pride' ovens manufactured, distributed, sold, or installed by QCP ... prior to the Closing Date of the APA." (Compl. ¶ 25). QCP has been named as a defendant in these claims as well, and is also likely to continue to be. (*Id.* at ¶ 26).

Plaintiffs disclaim liability for these claims. They allege that all of the asbestos-related claims are premised on "events" that occurred "a decade or more prior to the Closing Date of the APA." (Compl. ¶ 28). Moreover, in the years since that date, Bakers Pride "has not manufactured, distributed, sold or installed any 'Baker's Pride' ovens containing asbestos." (*Id.* at ¶ 29).

5

Therefore, "[f]or nearly 20 years, [Plaintiffs] tendered the Asbestos Claims that name[d] them as defendants to QCP and/or its agents, and QCP and/or its agents defended and resolved [them]." (*Id.* at ¶ 32).  It was not until 2015 that "QCP and/or its agents" began "fail[ing] and refus[ing] to indemnify, defend and hold harmless Standex and [Bakers Pride] from and against the Asbestos Claims." (*Id.* at ¶ 35).

## B.   Procedural Background

On April 23, 2015, QCP filed a complaint in this District, which was docketed at number 15 Civ. 3243 (GBD).  (TPC ¶ 37; Ans. ¶ 93).  But before the case progressed very far, and "[i]n order to allow the parties to seek an amicable resolution of the issues," the parties agreed that the case "would be dismissed without prejudice," with leave to "be refiled if a resolution was not attained and on twenty days['] notice."  (*Id.* at ¶ 38; *see also* Ans. ¶ 94; TPC, Ex. C; Ans., Ex. C).  The parties also entered into a tolling agreement with regard to any applicable statute of limitations.  (TPC ¶ 43; Ans. ¶ 95).  That agreement specified that "any claim which was timely asserted in the first filed action would be considered timely [in any later-filed action] even if in the intervening time period a Statute of Limitations may have expired." (*Id.* at ¶ 44; *see also id.* at Ex. D; Ans., Ex. D).

Plaintiffs — who were defendants in the earlier litigation — filed their Complaint in this action on January 22, 2016 (Dkt. #1), and an Amended Complaint on February 5, 2016 (Dkt. #11-12).  In the interim, on January 29, 2016, QCP provided the notice required by the parties' Tolling Agreement.  (TPC

¶ 39).  QCP answered on March 4, 2016, asserting counterclaims against Plaintiffs.  (Dkt. #19).  Both parties then filed a series of letters between March 21, 2016, and April 5, 2016, advising the Court that QCP wished to reopen the prior case between the parties, in order to name parties that Plaintiffs had omitted from their Complaint, and that Plaintiffs opposed this reopening.  (Dkt. #26-27, 29-30).  The Court directed the parties to appear at a conference to discuss this dispute.  (Dkt. #31).

At the conference held on April 20, 2016, the Court discussed with the parties their intentions regarding this litigation.  (Dkt. #36).  The Court directed QCP to file an Amended Answer and Third-Party Complaint within 30 days of the conference.  (*Id.*).  The Court also gave Plaintiff Standex leave to file a motion to dismiss both QCP's counterclaims against it, and gave QCP's contemplated Third-Party Defendants leave to file a motion to dismiss the Third-Party Complaint.  (*Id.*).

QCP filed its Amended Answer (Dkt. #38), and Third-Party Complaint (Dkt. #39), on May 20, 2016.  Plaintiff Standex and Third-Party Defendants filed a joint letter on June 3, 2016, advising the Court of their intention to file a joint motion to dismiss QCP's Counterclaims against Standex and its Third-Party Complaint.  (Dkt. #48).  The Court scheduled briefing for the contemplated motion (Dkt. #49), and on June 24, 2016, Standex and the Third-Party Defendants filed their Motion to Dismiss QCP's Counterclaims and Third-Party Complaint (Dkt. #58-60).  QCP filed its opposition on July 25, 2016

(Dkt. #61-63), and Standex and the Third-Party Defendants filed their reply on August 8, 2016 (Dkt. #64).

## DISCUSSION

**A.    Applicable Law**

### 1.    Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to '[nudge a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The complaint to be considered on a motion to dismiss is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  *See, e.g.*, *Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 221 (2d Cir. 2015) (citing Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")).  The Court may also consider materials attached to an Answer.  *Canario* v. *City of N.Y.*, No. 05 Civ. 9343 (LBS), 2006 WL 2015651, at *2 (S.D.N.Y. July 12, 2006).  Moreover, where a breach of contract is alleged, the allegedly breached contract is considered integral to a complaint, and may be considered even where a plaintiff or defendant has failed to attach it to his or her pleading.  *See, e.g.*, *Castorino* v. *Citibank N.A.*, No. 07 Civ. 10606 (PAC), 2008 WL 5114482, at *3 n.3 (S.D.N.Y. Dec. 5, 2008) ("On a motion to dismiss, 'the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference as well as documents upon which the complaint relies and which are integral to the complaint.'" (quoting *Subaru Distribs. Corp.* v. *Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005))).

## 2.    Choice of Law

"Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law

governs." *Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000).  The Second Circuit has interpreted New York's choice-of-law rules to dictate that "the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation mark and alteration omitted) (quoting *Fletcher* v. *Atex, Inc.*, 861 F. Supp. 242, 244 (S.D.N.Y. 1994), *aff'd,* 68 F.3d 1451 (2d Cir. 1995)); *see also United States* v. *Funds Held in the Name or for the Benefit of Wetterer* ("*Wetterer*"), 210 F.3d 96, 106 (2d Cir. 2000) (citing *First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983)); *Nat'l Gear & Piston, Inc.* v. *Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013).

This interpretation is binding on the Court.  *See Euro Tr. Trading S.A.* v. *Uralsib Ins. Grp.*, No. 09 Civ. 4712 (RJH), 2009 WL 5103217, at *1 (S.D.N.Y. Dec. 23, 2009) (collecting cases applying Second Circuit interpretation of New York state's choice-of-law rules); *see also id.* ("Even on issues of state law, the [district court] is bound by Second Circuit precedent.").  And it applies in such cases even where a contract between the parties suggests otherwise:  "The law of the state of incorporation applies to the veil-piercing analysis even if there is a choice-of-law provision in a contract that governs the relationship between the parties." *Panam Mgmt. Grp., Inc.* v. *Peña*, No. 08 Civ. 2258 (JFB) (ARL), 2011 WL 3423338, at *3 (E.D.N.Y. Aug. 4, 2011) (citing *Kalb, Voorhis & Co.* v. *Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)); *see also Impulse Mktg. Grp., Inc.* v. *Nat'l Small Bus. All.*, No. 05 Civ. 7776 (KMK), 2007 WL 1701813, at *7

(S.D.N.Y. June 12, 2007) ("The Contract's choice of law provision applies only to construction and interpretation of the Contract, not to all collateral claims arising from the Contract."); *Rondout Valley Cent. Sch. Dist.* v. *Coneco Corp.*, 339 F. Supp. 2d 425, 440 (N.D.N.Y. 2004) ("The Agreement's choice of law clause should not govern the piercing the corporate veil analysis because that issue is distinct from the formation and interpretation of the Agreement itself."). For this analysis, "[o]nly the incorporation of the relevant defendant matters." *SungChang Interfashion Co.* v. *Stone Mountain Accessories, Inc.*, No. 12 Civ. 7280 (ALC) (DCF), 2013 WL 5366373, at *5 (S.D.N.Y. Sept. 25, 2013).

## B. Plaintiff Standex's Motion to Dismiss QCP's Counterclaims Is Granted

### 1. QCP's Counterclaims

The parties agree that on January 10, 2007, Standex entered into the SPA with AAI, through which it acquired all of the shares of stock of AAI. (Ans. ¶ 87 & Ex. B; Pl. Br. 6). Standex also acquired "all shares of stock ... of AAI's subsidiary companies," including Bakers Pride. (Ans. ¶ 88 & Ex. B (identifying AAI's subsidiaries to include Bakers Pride and APW)). QCP contends that this acquisition rendered Bakers Pride "a member of the Standex family of companies," and rendered Standex "responsible to QCP." (Ans. ¶ 92; *see also id.* at ¶ 100 ("Pursuant to [Standex's] acquiring [Bakers Pride] in the 2007 [SPA], [Standex] has acquired all [rights], liabilities and obligations under the APA including with regard to QCP.")). This responsibility, QCP goes on to assert, includes "all or partial" liability for the asbestos-related product liability

11

claims in which QCP is named a defendant and which claims QCP asserts are "based in whole or in part on, *inter alia*, events that occurred subsequent" to the APA's Closing Date.  (Ans. ¶¶ 104-05).  QCP's counterclaims are premised on Standex's refusal to "defend or in any way participate in defending" the asbestos actions (*id.* at ¶ 107), which refusal has forced QCP to incur legal fees defending these actions on its own, among other damages (*id.* at ¶¶ 108-242). In summary: QCP seeks to hold Standex liable for the acts and failures to act of Bakers Pride, reasoning that Standex is the parent to and shareholder of all shares of Bakers Pride.

### 2. Analysis

#### a. The Court Considers Delaware Law in Resolving Standex's Motion to Dismiss the Counterclaims

To analyze QCP's counterclaims against Standex, the Court must apply Delaware law, because both Standex (the parent) and Bakers Pride (the subsidiary) were "and still [are] ... corporation[s] duly organized and existing pursuant to the laws of the State of Delaware."  (Ans. ¶¶ 63, 65).

It is a basic rule of corporate law that parent corporations are not held liable for the acts of their subsidiaries.  *See United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998).  And "'Delaware courts' especially 'take the corporate form very seriously and will disregard it only in the exceptional case.'"  *Nat'l Gear & Piston*, 975 F. Supp. 2d at 401-02 (quoting *Soroof Trading Dev. Co.* v. *G.E. Microgen, Inc.*, 283 F.R.D. 142, 150 (S.D.N.Y. 2012)).  Thus, a plaintiff arguing to pierce the corporate view under Delaware law "faces a 'heavy burden.'"  *Id.* at 402 (quoting *Soroof Trading Dev. Co.*, 283 F.R.D. at 150).

"As the Second Circuit has explained, 'Delaware law permits a court to pierce the corporate veil of a company where there is fraud *or* where [it] is in fact a mere instrumentality or alter ego of its owner.'" *Nat'l Gear & Piston*, 975 F. Supp. 2d at 402 (alteration in original) (quoting *Fletcher*, 68 F.3d at 1457 (emphasis added) (quoting *Geyer* v. *Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992))); *see also PSG Poker, LLC* v. *DeRosa-Grund*, No. 06 Civ. 1104 (DC), 2008 WL 190055, at *8 (S.D.N.Y. Jan. 22, 2008) (same).  Moreover, with respect to the alter ego exception, liability can arise absent a showing a fraud. *See Fletcher*, 68 F.3d at 1457 ("[U]nder an alter ego theory, there is no requirement of a showing of fraud." (citing *Harper* v. *Del. Valley Broads., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991))). In such cases, "a plaintiff must show [i] that the parent and the subsidiary 'operated as a single economic entity' and [ii] that an 'overall element of injustice or unfairness ... [is] present.'" *Id.* (last alteration and omission in original) (quoting *Harper*, 743 F. Supp. at 1085).

To satisfy the first of these factors requires more than a showing of domination and control by the parent corporation.  *See SungChang Interfashion*, 2013 WL 5366373, at *6-7.  Rather, "a plaintiff must allege facts that, if taken as true, demonstrate the [parent entity's] *complete* domination and control of the corporation such that the corporation 'no longer ha[s] legal or independent significance of [its] own.'" *Id.* (emphasis added) (quoting *Hart Holding Co.* v. *Drexel Burnham Lambert, Inc.*, C.A. No. 11514, 1992 WL 127567, at *11 (Del. Ch. May 28, 1992)); *see also O'Leary* v. *Telecom Res. Serv., LLC*,

No. 10C-03-108, 2011 WL 379300, at *7 (Del. Super. Ct. Jan. 14, 2011) ("The degree of control that would be required to 'pierce the veil' and hold the parent corporation liable would be a degree of control by the parent corporation that the subsidiary no longer has legal or independent significance of its own.").

As another court in this District has noted in interpreting Delaware law,

> In evaluating whether the parent and subsidiary are a single economic entity, courts look to the following factors: "whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Nat'l Gear & Piston*, 975 F. Supp. 2d at 403 (quoting *Nat'l Gear*, 861 F. Supp. 2d at 376). These factors are not dispositive, however, and "a [p]laintiff may survive a motion to dismiss by pleading other relevant allegations regarding the parent's complete domination." *Id.*

To show the alter ego second factor — an "overall element of injustice or unfairness" — "a plaintiff must allege injustice or unfairness that is a result of an abuse of the corporate form. In other words, the corporation effectively must exist as a sham or shell through which the parent company perpetrates injustice." *Nat'l Gear & Piston*, 975 F. Supp. 2d at 406 (citing *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002) ("There must be an abuse of the corporate form to effect a fraud or an injustice — some sort of elaborate shell game."); *Wallace ex rel. Cencom Cable Income Partners II, Inc.* v. *Wood*, 752

A.2d 1175, 1184 (Del. Ch. 1999) ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Outokumpu Eng'g Enters., Inc.* v. *Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) ("[T]he alter ego theory requires that the corporate structure cause fraud or similar injustice.")).

> ### b. QCP Fails to State a Basis to Disregard the Corporate Form as to Standex Under Delaware Law

QCP's only allegation with regard to fraud comes in its opposition brief, where QCP argues that "Standex undertook a course of subterfuge and denied any knowledge with respect to AAI and AAI's acquisition of [Bakers Pride]." (Def. Br. 4). And its only allegation that could plausibly give rise to an alter ego claim is that by virtue of "[Standex's] acquiring [Bakers Pride] in the 2007 [SPA], [Standex] has acquired all [rights], liabilities and obligations under the APA including with regard to [QCP]." (Ans. ¶ 100). But the alleged fraud is not pled with the particularity required by Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b).[4] And QCP's other allegations do no more than "describe a 'typical' relationship between parent and subsidiary." *In re RSL COM PRIMECALL, Inc.*, No. 01-11457 (ALG), 2003 WL 22989669, at *16 (Bankr. S.D.N.Y. Dec. 11, 2003) (citing *Fletcher*, 68 F.3d at 1461; *LaSalle Nat'l Bank* v.

---

[4] To the extent QCP's arguments rely on exhibits attached to its briefing, which are not part of the pleadings, the Court may not consider them. *See SungChang Interfashion Co.* v. *Stone Mountain Accessories, Inc.*, No. 12 Civ. 7280 (ALC) (DCF), 2013 WL 5366373, at *4 (S.D.N.Y. Sept. 25, 2013) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion[,] the court may exclude the additional material and decide the motion on the complaint alone[.]" (quoting *Fonte* v. *Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (citing Fed. R. Civ. P. 12(b)))).

*Perelman*, 82 F. Supp. 2d. 279, 295 (D. Del. 2000)); *see also Lopez* v. *Delta Funding Corp.*, No. 98 Civ. 7204 (CPS), 2000 WL 36688915, at *12 (E.D.N.Y. June 6, 2000) ("In this case, the only allegation in the second amended complaint that has any bearing on the issue of piercing the corporate veil states that [one company] is the wholly owned subsidiary of [a second company] and that both companies share the same corporate offices.  Plainly, those allegations do not constitute the combination of elements that Delaware law requires to substantiate an alter ego claim. ... Nor do the complaints allege that injustice or unfairness would exist if the corporate veil were not pierced.").  As such, QCP's allegations do not meet the high bar to permit veil piercing under Delaware law, and its counterclaims against Standex must be dismissed.

## C.   Third-Party Defendants' Motion to Dismiss QCP's Third-Party Complaint Is Granted

### 1.   QCP's Claims Against AAI and APW

With regard to AAI, QCP claims that by virtue of the SPA — pursuant to which Standex "acquired all shares of stock of AAI" — AAI is "a member of the [Standex] family of companies" and "a subsidiary of [Standex]."  (TPC ¶¶ 51-52).  As such, it is alleged, "AAI has incurred all liabilities and obligations under the APA" and "is responsible to ... QCP to the same extent as Plaintiff Bakers Pride."  (*Id.* at ¶¶ 53-54).  But AAI has "failed and refused to defend or in any way participate in defending" the asbestos claims in which QCP has been named a defendant (*id.* at ¶ 62), and this refusal has damaged QCP, including because it has had expend legal fees defending these actions on its own (*id.* at ¶¶ 63-197).

16

With regard to APW, QCP contends that Bakers Pride Acquisition Company, a signatory to the APA and predecessor to Bakers Pride, was formed by "certain members of APW" specifically "for *inter alia*, the purchase of the assets, use of the Bakers Pride name and incursion of certain liabilities of QCP." (TPC ¶¶ 13-14). APW is also alleged to be "a member of the [Standex] family of companies" and "a subsidiary of Plaintiff [Standex]." (*Id.* at ¶¶ 55-56). As such, QCP contends, "APW has incurred all liabilities and obligations under the APA." (*Id.* at ¶ 57). QCP further alleges that APW "has acted as the Agent/Representative of the entity now known as Plaintiff [Bakers Pride] with respect to the APA and participated in the administration of claims and dissemination of information with regard to the APA." (*Id.* at ¶ 58). Yet, APW has "failed and refused to defend or in any way participate in defending" the asbestos actions (*id.* at ¶ 62), which refusal QCP claims has forced it to incur legal fees defending these actions alone and otherwise damaged QCP (*id.* at ¶¶ 63-197).

> ### 2.   Analysis
>
> #### a.   The Court Considers Texas Law in Resolving AAI's and APW's Motion to Dismiss the Third-Party Complaint

Because AAI and APW are the Third-Party Defendants named in QCP's case, it is the place of incorporation of each that is relevant to the Court's choice of law analysis. *See SungChang Interfashion Co.*, 2013 WL 5366373, at *5. Both AAI and APW "was and still [are] ... corporation[s] duly organized and existing pursuant to the laws of the State of Texas," and thus Texas law applies

to the Court's veil-piercing analysis with regard to the Third Party Complaint.
(TPC ¶¶ 4, 6).

As a general rule in Texas, "[a] subsidiary corporation will not be
regarded as the alter ego of its parent merely because of stock ownership, a
duplication of some or all of the directors or officers, or an exercise of the
control that stock ownership gives to stockholders." *PHC-Minden, L.P.* v.
*Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007) (alteration in original)
(quoting *Gentry* v. *Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex.
1975)); *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P.* v. *Nat'l Dev. &
Research Corp.*, 299 S.W.3d 106, 116 (Tex. 2009) ("[O]ne corporation's
ownership of all or the majority of a second entity [does not] affect the second
entity's existence as a distinct, separate legal entity."). This rule is particularly
strict where liability is alleged to arise from a breach of contract. *See Miles* v.
*Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) ("Texas courts have been
less reluctant to disregard the integrity of related corporations in tort, as
contrasted with contract, cases. This differential treatment can be attributed
in major part to the element of choice inherent in a contractual
relationship[.]").[5]

---

[5]     This is reflected in the Texas Business Organizations Code, which establishes that a
shareholder in a corporation cannot be held liable to that corporation for its contractual
obligations. The statute provides that, with regard to for-profit corporations,

> [a] holder of shares, an owner of any beneficial interest in shares,
> or a subscriber for shares whose subscription has been accepted,
> or any affiliate of such a holder, owner, or subscriber or of the
> corporation, may not be held liable to the corporation or its obligees
> with respect to ... any contractual obligation of the corporation or
> any matter relating to or arising from the obligation on the basis
> that the holder, beneficial owner, subscriber, or affiliate is or was

That said, "[u]nder Texas law, 'there are three broad categories in which a court may pierce the corporate veil: [i] the corporation is the alter ego of its owners and/or shareholders; [ii] the corporation is used for illegal purposes; and [iii] the corporation is used as a sham to perpetrate a fraud.'" *Rimade Ltd.* v. *Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) (quoting *W. Horizontal Drilling, Inc.* v. *Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994)). Texas common law thus permits a corporate veil to be pierced "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result," such as when a corporate structure is abused to "evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *SSP Partners* v. *Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451-52 (Tex. 2008) (quoting *Castleberry* v. *Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986)).

Alter ego liability arises under Texas law "when there is such unity" between entities that their "separateness ... has ceased" and holding only one "liable would result in injustice." *SEC* v. *Res. Dev. Intern., LLC*, 487 F.3d 295, 302 (5th Cir. 2007); *see also Commnw. Gen. Corp.* v. *York*, 177 S.W.3d 923, 925 (Tex. 2005) (holding that to prove an alter ego relationship, "the parent must be shown to control the internal business operations and affairs of the subsidiary to the extent that the two entities effectively cease to be separate").

---

the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.

Tex. Bus. Orgs. Code § 21.223; *see also Willis* v. *Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006).

"Unrestricted ownership" alone is not sufficient to prove that one corporation is the alter ego of another. *Riquelme Valdes* v. *Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1354 (5th Cir. 1987) (citing *Gentry*, 528 S.W.2d at 573) ("Unrestricted ownership of that entity provides a logical backdrop for domination, although ownership alone will not support an alter ego finding."). Courts consider instead a number of factors to determine "whether an alter ego relationship exists," such as "the total dealings of the [two entities], including the degree to which corporate formalities have been followed and ... property [has] been kept separately[;] the amount of financial interest, ownership and control [one entity] maintains over the [second entity;] and whether the [second entity] has been used [by the first] for personal purposes." *Zahra Spiritual Tr.* v. *United States*, 910 F.2d 240, 245 (5th Cir. 1990) (quoting *Castleberry*, 721 S.W.2d at 272).

### b. QCP Fails to State a Basis to Disregard the Corporate Form as to AAI or APW Under Texas Law

In this case, QCP has not alleged that AAI or APW has used its corporate form for illegal purposes, as a sham, or to perpetuate fraud. Indeed, QCP has not alleged unfairness so much as it has speculated that unfairness may result if it is not permitted to bring its case against AAI and APW. The Court understands QCP to be alleging that AAI and APW *may* be using the corporate form to evade their obligations under the APA. But most of these allegations come too late and in the wrong document, i.e., QCP's briefing on the instant motion. The Court finds that QCP has alleged no facts in its pleadings to substantiate its conclusory statement that AAI and APW are engaging in

evasion that would justify piercing the corporate view.  *See Iqbal*, 556 U.S. at 678.  Indeed, no facts at all are alleged with regard to the relationship between Bakers Pride and AAI, beyond the assertion that there is such a relationship.  This allegation alone cannot support an inference of fraud, evasion, or an alter ego relationship.

With regard to APW, QCP alleges slightly more than the mere existence of a relationship between APW and Bakers Pride:  It alleges that APW "has acted as the Agent/Representative of the entity now known as Plaintiff [Bakers Pride] with respect to the APA and participated in the administration of claims and dissemination of information with regard to the APA."  (TPC ¶ 58).  But such action does not suffice to show that either company "control[s] the internal business operations and affairs of the [other] to the extent that the two entities effectively cease to be separate."  *See Commnw. Gen. Corp.*, 177 S.W.3d at 925.  Indeed, rather than alleging facts to support its claims against APW, QCP concedes that it is "[a]t present ... impossible to determine what if any liability passed on or through to APW."  (Def. Br. 9).

Moreover, even if APW had helped to form the entity that was a signatory to the APA, which QCP pleads and the Court assumes to be the case, APW itself was not a signatory to the APA.  And QCP has not alleged any facts to support an inference that APW's assistance with formation conferred on it liability for Bakers Pride's APA obligations.  QCP has not pleaded facts sufficient to permit veil piercing under Texas law, and QCP's Third-Party Complaint must therefore be dismissed.

**D.     Leave to Amend Is Neither Sought Nor Granted**

The Court is not required to offer QCP leave to amend, particularly where QCP has not requested it.  *See Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made. ... Moreover, in the absence of any indication that [a plaintiff] could — or would — provide additional allegations that might lead to a different result, [a court does] not err in dismissing her claim with prejudice." (citation omitted) (citing Fed. R. Civ. P. 15(a))).  And the Court has already given QCP leave to amend on one occasion, which amendment gave rise to the instant motion.  The Court recognizes, however, that a "veil-piercing attack in particular is a 'fact-laden claim,' and that the relevant information is all in [QCP's opponents'] possession, such that early — i.e., before discovery — dismissal with prejudice [may be] inappropriate."  *Nat'l Gear & Piston*, 975 F. Supp. 2d at 411.  QCP has suggested as much, asserting its belief that "[g]iven the distinct lack of discovery regarding the corporate scenarios impacting Standex and the other Standex entities, it is respectfully submitted that [movant's] seeking the instant relief is premature."  (Def. Br. 1).

"But [QCP] has not yet demonstrated that any claim against [Standex, AAI, or APW] could be viable."  *Nat'l Gear & Piston*, 975 F. Supp. 2d at 411; *see also Gallop*, 642 F.3d at 369.  The Court therefore does not grant QCP leave to file a Second Amended Answer and Amended Third-Party Complaint at this point.  "If, in the course of discovery," QCP "discovers sufficient facts to assert

22

claims" against Standex, AAI, or APW, QCP "may file a Motion To Amend, and the Court will consider its merits at that time." *Nat'l Gear & Piston*, 975 F. Supp. 2d at 411. "For now, however, [AAI, and APW are] dismissed from this case." *Id.*

## CONCLUSION

For the reasons set forth above, Standex's motion to dismiss QCP's counterclaims and AAI and APW's motion to dismiss the Third-Party Complaint are granted. The Clerk of Court is directed to terminate the motion pending at Docket Entry 58. The remaining parties, the original Plaintiffs and Defendant, are directed to provide the Court with a joint status letter and proposed case management plan on or before **March 8, 2017**, so the Court may determine how this case will proceed.

SO ORDERED.

Dated:      February 6, 2017
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

23